WYMAN, ET AL. *v.* McKEEVER, REC'R FOR FIRST CONTINENTAL SAVINGS & LOAN ASSOCIATION, INC.

[No. 301, September Term, 1964.]

*Decided May 28, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*Charles A. Docter,* with whom were *Docter & Docter* on the brief, for appellants.

*Charles D. Sanger, Jr.,* for appellee.

132

HAMMOND, J., delivered the opinion of the Court.

Presently presented for determination is whether holders of free shares in a building association now in receivership, who were given checks by the association which were not paid on presentation, in the amount of all, or the greater part of, the par value of their shares at times when the association was insolvent, are creditors of the association entitled to prior payment, or are still shareholders on an equal basis with non-withdrawing shareholders, entitled to payment only after creditors have been paid.

The court auditor asked the court for instructions as to the right to propriety of payment of the claims of some thirteen individuals. Each says that prior to the hour on January 3, 1962, when a receiver was appointed for the Association and it was put under jurisdiction of the court, he or she had filled out withdrawal slips provided by the Association for withdrawing money and received checks "in the amounts requested." Five of such checks were received on January 3, five on January 2, one on December 21, and two on December 14. Each payee of a check, except one who was advised before he had a chance to do so that it would not be honored, presented the check which had been received and was refused payment.

The trial judge found as a fact, and the appellants do not seriously challenge the correctness of the finding, that the Association was insolvent when each of the checks was given, within the accepted definition of insolvency of building associations, that unlike an ordinary business corporation which is insolvent if its assets are insufficient to pay its creditors, a building association is deemed to be insolvent when it cannot pay general creditors and its shareholders the amount of their contributions, dollar for dollar. Sundheim, *Building and Loan Associations* (3rd Ed., 1933), Sec. 188.

The appellants claim that when the checks were given them, they ceased to be shareholders and became creditors, holding writings obligatory of the Association which were debts that it must pay before it could pay anything to shareholders. They rely on *Rickert v. Suddard* (Ill.), 56 N. E. 344, wherein it was held that the recipient of a check of a building association,

given in payment for the value of his shares in the association a month before the court declared the association insolvent, was a creditor.

The receiver of the Association argues that because the withdrawals were made and the checks given when the Association was insolvent, the recipients remained members of the Association who had only the same rights and must bear the same burdens as all other shareholders of the same class. The lower court agreed that this was the law, and held that the appellants had no priority over other shareholders and must bear their proportion of the losses suffered by the Association. We think the decision was correct.

The case of *Rickert v. Suddard, supra,* relied on by the appellants, cited no authority bearing on the law of building associations or the rights of their shareholders when the association is insolvent, and the case stands almost alone. The general rule, now firmly established by the great majority of the cases on the subject, is that after a building association has become insolvent in fact, even though this is not known, the right of every shareholder to equality in the distribution attaches as a paramount equity and no shareholder has the right to defeat that equality by withdrawing, perfecting an incompleted attempt to withdraw, or retaining the fruits of a completed withdrawal. Sundheim, *op. cit.,* Sec. 158, says:

> "Building and loan associations are democratic institutions, and all members stand upon an equal footing, and the rights of one member are the rights of all the members. * * *
>
> "* * * if when notice was given, the association although in operation was actually insolvent, or * * * whether the withdrawing member knew of it or not, he obtains no preference over his fellow members.
>
> "* * * The right of withdrawal, which is a peculiar feature of building and loan associations, is not given to the member for the purpose of enabling him to evade his just share of the losses incurred by an insolvent association."

See also Sec. 163 of Sundheim; 13 Am. Jur. 2d *Building and*

*Loan Associations,* Sec. 114 and Sec. 109; 12 C. J. S. *Building and Loan Associations,* Sec. 116, pp. 538-541; and the Anno. "Building and Loan Association — Withdrawn or Matured Stock," 98 A. L. R. 89, 111, *et seq.*

In *Knox National F. L. Asso. v. Phillips,* 300 U. S. 194, 81 L. Ed. 599, it was held that a member of a federal farm loan association was not entitled to have granted his demand for payment of the full par value of his paid-up shares, made when the association was insolvent. Justice Cardozo, for the Court, said (p. 202 of 300 U. S.) that the holding had:

> "* * * the support of persuasive analogies in the law of building and loan associations, which have much in common with farm loan associations incorporated by act of Congress. The settled rule is that the shares of building and loan associations are not subject to retirement when the association is insolvent, and that any refund made at such a time may be reclaimed by a receiver."

See, too, *Christian's Appeal,* 102 Pa. 184, 8 Ann. Cases 832; *Fitzgerald v. State Mut. Building and Loan Ass'n* (Ct. Ch. N. J.), 79 Atl. 454, 456-457; and *Coltrane v. Baltimore Building & Loan Ass'n* (C. C., D. Md.), 110 Fed. 272; affirmed sub nom., *Coltrane v. Blake* (4th Cir.), 113 Fed. 785.

In *Colin v. Wellford* (Va.), 46 S. E. 780, 783, the shareholder was given notes by the association in part payment for the value of his paid-up shares at a time when the association, although not notoriously so, was in fact insolvent. The Court held that the shareholder had obtained an apparent advantage:

> "* * * which the principle of mutuality applicable to the distribution of the assets of an insolvent company of this kind do not permit him to hold. * * * The settlement made is not so far executed as to be beyond recall, and Colin can be remitted to his position as stockholder without any injustice to him."

*Ft. Smith Building Ass'n v. Cohn* (Ark.), 87 S. W. 1172, reached a similar result. *Aldrich v. Gray* (6th Cir.), 147 Fed.

453, held that the receiver could reclaim payments to a withdrawing stockholder made when the association was insolvent. See also *Amberg v. Aldrich* (6th Cir.), 205 Fed. 498; *Kline v. Arizona Mut. Savings & Loan Ass'n,* 235 Fed. 694, 701; *Stone v. New Schiller Building & Loan Ass'n* (Pa.), 153 Atl. 758; *Manheimer v. Henderson Building & L. Ass'n's Assignee* (Ky.), 72 S. W. 313.

In *Jolly v. First Union,* 235 Md. 161, we noted that in *Cook v. Emmet Bldg. Ass'n,* 90 Md. 284 (which held that shareholders who had given notice of withdrawal when the association was insolvent but before it had been judicially declared so were not entitled to the priority of creditors), the Court had cited with approval an Illinois case, the holding of which *Jolly* summarized thus (p. 167 of 235 Md.):

> "* * * that shareholders of an insolvent building association, who had given notice of withdrawal before a judicial declaration of insolvency, were not entitled to priority of payment in the distribution of the association's assets, as a general creditor would be, but were only entitled to payment *pari passu* with the non-withdrawing shareholders."

*Jolly* went on to hold that under the case law and the applicable statutes, "Code (1963 Cum. Supp.), Art. 23, secs. 161A to 161AAA inclusive," a free shareholder who had given notice of withdrawal while the association was insolvent and had not been paid was not a creditor who could obtain priority in the receivership of the association over the other free shareholders. We think the appellants here are in no better legal position than was Jolly.

*Orders affirmed, with costs.*